CAMP BIRD, Limited, v. LARSON.

(Circuit Court of Appeals, Eighth Circuit.   March 6, 1907.)

No. 2,482.

MASTER AND SERVANT—NEGLIGENCE—EVIDENCE OF CHANGE AFTER ACCIDENT INADMISSIBLE TO PROVE.

Evidence that after the accident the master repaired his machinery or building, or adopted a different method of conducting his business, is inadmissible to prove his negligence at the time of the accident.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 918.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Colorado.

L. F. Twitchell (Frank C. Goudy and Story & Story, on the brief), for plaintiff in error.

John C. Bell (F. D. Catlin and C. L. Blake, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge.   The plaintiff below, a servant of the Camp Bird, Limited, a mining corporation, was injured by the fall of rock from a bucket which was ascending through a runway as he was

mucking in the bottom of a shaft. The bucket was drawn up through a runway in the corner of the shaft which was lined with plank. At the tunnel level, which was 220 feet above the bottom of the shaft, one side of this runway was open for a height of 16 feet to permit the introduction of timber, pipes, and other materials. Across the upper end of this opening there was a timber, termed a "strut," the inner face of which was four inches farther from the center of the runway than its lining below the opening, so that the runway was four inches wider opposite this strut than it was below the opening. The plaintiff was at work at the foot of this runway, and as the bucket, which had been filled with stone, was drawn up, it caught on this timber and spilled some of its contents upon him. The first witness called on his behalf was the superintendent of the mine, and his examination proceeded in this way:

"Q. Did you ever see the arm of that bare timber where the bucket caught on the 13th of April? A. No, I didn't.

"Q. Didn't see the arm? A. No, sir.

"Q. Why did you have the opening so high? A. To swing in timber, rail, pipe, tools of all kinds, I suppose, going into the bottom.

"Q. It wasn't necessary to have it that high? A. Yes, should have been higher.

"Q. Haven't you shortened it materially? A. No.

"Q. Is it in the same condition now that it was at the time of the accident?

"Mr. Twitchell: We object, as we don't see why that has any bearing in the case as to condition then.

"Mr. Bell: We don't wish to show it as an admission of the defect, or to show it for any other illegitimate purposes. What we desire is to show that they have not only changed or shortened it materially, but put in different timber, etc.

"The Court: I think you can ask that question.

"To which ruling of the court, the defendant by its counsel, then and there duly excepted.

"A. No, sir.

"Q. How has it been changed? A. I put in some short planking from the lower side of that timber, probably 18 inches long.

"Q. Doesn't that go practically 18 inches lower? A. No, not on the line of the timber.

"Mr. Bell: This is a small model made by the plaintiff himself. Now, this is what he calls the platform. Now, at the time the accident occurred, that timber was square there, wasn't it, about 18 feet above? A. Yes, sir.

"Q. Now it comes in that shape?

"Defendant objects, if court please.

"The Court: Counsel disclaims any purpose—

"Mr. Bell: But we do claim that by this very door they ran their timber up there, and that they come in on the inside and have taken 18-inch boards and have brought it that way to have no difficulty at all, and have improved the shaft very much.

"Mr. Twitchell: Upon that part, your honor, he states that it is sought to show that they improved the shaft, and no negligence of that sort is alleged. The only negligence that is alleged is the existence of this cross-piece in the original condition of the shaft.

"The Court: You have asked about a special condition. You may ask that.

"Mr. Bell: I will pass that.

"Q. Now, give its present condition. A. We put in timber here on the outside.

"Q. Back from a line of the shaft, outside the shaft entirely? A. Yes, sir.

152 F.—11

"Q. Then you took boards and you boarded from the inside of the two? A. No.

"Q. How did you board it?  A. Boarded it from the inside face of that particular timber.  It came against the other timber."

Evidence that after the accident the master repaired his building or his machinery, or adopted a different method of conducting his business, is inadmissible to prove his negligence at the time of the accident, because a rule that such evidence is competent would impose a penalty upon the master for making such repairs and changes, would make them a confession on his part of a prior wrong, and would in that way deter him from improving his property and his ways.  Evidence of this nature is always inadmissible because it has no legitimate tendency to prove that the building, the machinery, or the methods were not reasonably safe and suitable for the use to which they were applied at the time of the injury.  Railroad Co. v. Hawthorne, 144 U. S. 202, 208, 12 Sup. Ct. 591, 36 L. Ed. 405; Motey v. Pickle Marble & Granite Co., 20 C. C. A. 366, 371, 74 Fed. 155, 159; Railway Co. v. Parker, 5 C. C. A. 220, 222, 55 Fed. 595, 597.  The reception of the evidence that after this accident the defendant put in short planking probably 18 inches long from the lower inside face of the timber, which caught the bucket so that the upper end of the opening took the form of an inclined plane, instead of a horizontal timber, as before the accident, was a clear violation of this rule of evidence which necessitates a new trial of this action.

The error of the admission of this testimony was not extracted by the charge of the court, which does not refer to it, nor by the statement of counsel for the plaintiff that they did not wish to introduce it as an admission of defect or for any other illegitimate purpose, especially in view of their declaration at the same time that they did claim to establish by virtue of it the fact that the defendant had taken 18-inch boards and had improved the shaft very much.  Notwithstanding this statement of counsel, the fact remained that the evidence had a tendency to lead the jury to believe that the defendant was negligent before the accident, because after the accident it changed the form of the portion of the shaft upon which the bucket caught so that it would not catch it.

Upon this ground alone, the judgment is reversed.

The majority of the court are of the opinion that the evidence was sufficient to require a submission to the jury of the issue as to the negligence of the company, and that it was insufficient to show as a matter of law that Larson either assumed the risk or was guilty of contributory negligence, while the writer is convinced that there was no substantial evidence of any negligence on the part of the company.